CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 08 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM SYKES, | ) | Civil Action No. 7:17-cv-00275 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C. RATLEDGE, et al., | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |

William Sykes, a federal inmate proceeding pro se, commenced this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971).[1] Plaintiff names staff associated with the United States Penitentiary in Lee County, Virginia ("USP Lee"), as defendants. Plaintiff alleges that Defendants violated due process and inflicted cruel and unusual punishment in violation of the Fifth and Eighth Amendments of the United States Constitution. Defendants filed a motion for summary judgment, to which Plaintiff responded, making the motion ripe for disposition. After reviewing the record, the court dismisses any claim about the pending disciplinary charge for lack of jurisdiction and grants Defendants' motion for summary judgment as to the remaining claims.

I.

Plaintiff's alleges that Defendants violated his constitutional rights when they issued two allegedly false incident reports, placed him in the Special Housing Unit ("SHU"), and subsequently transferred him to a Special Management Unit ("SMU"). The first incident report, #2874480, concerns an assault on another inmate (the "Assault Charge"), and the second incident report, #2894898, concerns making a sexual proposal or threats to another (the "Proposal Charge"). Plaintiff also generally alleges that the isolating conditions of confinement he experienced in the SHU and SMU are cruel and unusual punishments.

---

[1] Plaintiff's other moniker is William Sykes-Bey.

## A.

On July 18, 2016, Plaintiff was moved to the SHU while staff investigated a fight among inmates. Based on video evidence, defendant Lt. Allen charged Plaintiff on July 26, 2016, with the Assault Charge. A few days later, defendant Hughes, as a member of the Unit Discipline Committee[2] ("UDC"), referred the charge to a Disciplinary Hearing Officer ("DHO") for adjudication. Defendant Mollica reviewed the charge as the DHO and remanded the charge for further investigation.

On August 12, 2016, Lt. Allen amended the charged with more details about the victim's injuries and re-issued the charge to Plaintiff. Another UDC convened on August 22, 2016, and referred the amended charge to a DHO for adjudication. Although she served as a UDC member for the original charge, Hughes also served as the DHO of the amended charge and found Plaintiff guilty on September 16, 2016.[3] Upon administrative review of the proceedings, however, Hughes' adjudication was remanded for a rehearing with a different DHO. The charge remained pending as of Defendants' motion for summary judgment, and Plaintiff has not alleged that he has since been convicted of the charge.

## B.

On September 11, 2016, defendant Anderson charged Plaintiff with "Making a Sexual Proposal or Threats to Another." Plaintiff allegedly gave Anderson legal a greeting card titled, "Thinking of You Today," that read:

> Today is the day that I give thanks and Supreme Honor [f]rom me to you, to secure you and myself as well I wish it was a better way [f]or us to communicate so neither one of us can get in trouble. However when I [f]irst came into contact with you I noticed that you have the [s]oul and [i]mage of a

---

[2] A UDC consists of two or more staff who, once an investigation is completed, decides whether a disciplinary charge warrants further adjudication. 28 C.F.R. § 541.7.

[3] Although the hearing was in September, Hughes did not issue the written hearing report until December 15, 2016.

[g]oddess with the spirit of an [a]ngel. It would be selfish of me if I didn't give thanks and appreciation to you for all the over looked hard-work you do around here no matter the cost or consequences enclosed with it. As you ran across my mind I couldn't do nothing [b]ut smile because the energy you give off is so positive and [f]ruitful, willing and always caring [f]or others with respect that's always unappreciated. Furthermore I pray that this touches your heart with no love or respect lost because if I didn't have you I don't know where I'll be.

The UDC referred the charge to a DHO, who found Plaintiff guilty of "Conduct Disruptive to the Orderly Operation of the Institution," most like "Making a Sexual Proposal." The imposed sanctions included the loss of twenty-seven days' good conduct time.

### C.

Plaintiff filed five administrative remedies during the approximate time of the charges.[4] Plaintiff filed remedy #886813-R1 (the "First Remedy") with the Mid-Atlantic Regional Office ("Regional Office") on December 8, 2016. Plaintiff complained about Mollica and Hughes being DHOs for the Assault Charge and claimed that the Warden of USP Lee never responded to a BP-9 he purportedly filed on September 27, 2016. Regional Office staff did not believe the First Remedy constituted a "sensitive" issue, rejected the First Remedy at intake on December 23, 2016, and returned it to him to file with the Warden.[5] Plaintiff did not do so.

Plaintiff filed remedy #888354-R1 (the "Second Remedy") with the Regional Office on January 9, 2017, to challenge the Assault Charge. Regional Office staff rejected it at intake on January 11, 2017, because it included more than one "continuation" page and advised Plaintiff to resubmit it within ten days. Plaintiff did not do so.

---

[4] Each administrative remedy is logged into SENTRY, the national database for the Federal Bureau of Prisons ("BOP") with a unique Remedy Identification Number to track that issue throughout the BOP's Administrative Remedy Program. Each Remedy Identification Number contains an extender that identifies the level of review. The extension "F-1" indicates the complaint was filed at the institution level. The extension "R-1" indicates the complaint or appeal was filed at the regional level. The extension "A-1" indicates the appeal was filed at the national level.

[5] A "sensitive" remedy may be filed directly to a regional office. 28 C.F.R. § 542.14(d)(1). A remedy qualifies as "sensitive" if it is reasonable to believe an "inmate's safety or well-being would be placed in danger if the [r]equest became known at the institution[.]" Id.

3

Plaintiff filed remedy #888744-R1 (the "Third Remedy") on January 9, 2017, to appeal the Proposal Charge. Regional Office staff denied the appeal on March 10, 2017.

Plaintiff filed remedy #895433-F1 (the "Fourth Remedy") on March 20, 2017, complaining that he had been housed in the SHU for too long and wanted to be released. USP Lee staff rejected it at intake that same day, noting Plaintiff did not submit the remedy through his counselor and failed to file either a BP-8 or the necessary evidence showing he had filed a BP-8. Plaintiff was told he resubmit the remedy in proper form within five days, but he did not do so.

Plaintiff filed remedy #888744-A1 (the "Fifth Remedy") on March 27, 2017, as an appeal of the Regional Office's denial of the Third Remedy. On April 5, 2017, Central Office staff rejected the Fifth Remedy at intake as partly illegible and instructed Plaintiff to resubmit the appeal. Plaintiff did not do so.

## II.

The challenge to the Assault Charge must be dismissed without prejudice for lack of jurisdiction. Article III, Section 2 of the United States Constitution allows federal courts to adjudicate only live cases or controversies. See, e.g., Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). A "litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. Based on the record, the Assault Charge is still pending, and thus, Plaintiff cannot yet present a justiciable due process challenge about it.[6] Accordingly, Plaintiff's due process challenge to the Assault Charge must be dismissed without prejudice.

---

[6] In any event, Plaintiff had been transferred out of USP Lee and this district since the Assault Charge had been vacated. Consequently, a claim about a subsequent conviction is not proper in this court and must be brought in the proper district court after exhausting available administrative remedies.

## III.

The United States filed a motion to dismiss that presents information outside the pleadings that the court will not exclude. Consequently, the court treats the motion to dismiss as a motion for summary judgment.[7] Fed. R. Civ. P. 12(d), 56.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## IV.

---

[7] The parties received notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Defendants argue that Plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). The court agrees and grants their motion for summary judgment as to the remaining claims.

The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." Ross v. Blake, 578 U.S. __, 136 S. Ct. 1850, 1859 (2016).

To exhaust a Bivens claim, a federal prisoner must properly raise his grievance through all four steps of the BOP's Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. The inmate must attempt informal resolution of his complaint with the appropriate BOP staff member by filing a BP-8, "Informal Resolution Form."[8] Id. § 542.13. Assuming no satisfactory resolution is achieved, the inmate must file a BP-9, "Administrative Remedy Request Form," within twenty calendar days of the event giving rise to the grievance. Id. § 542.14. If the inmate

---

[8] A BP-8 is not assigned a Remedy Identification Number and is not tracked in SENTRY. However, an inmate must document evidence of attempting informal resolution when filing a BP-9.

is dissatisfied with that outcome, he must file a BP-10 form to appeal to the appropriate Regional Director within twenty days.[9] Id. § 542.15(a). If the appeal is unsuccessful, the inmate must file a BP-11 form to the General Counsel within thirty days. Id. If the inmate does not receive a response within the time allotted for a reply at each level, the inmate may consider the absence of a response to be a denial at that level and may proceed to the next level. Id. § 542.18.

A remedy request or appeal may be rejected at intake at any level.[10] Id. § 542.17(a). "When a submission is rejected, the inmate shall be provided a written notice, ... explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal." 28 C.F.R. § 542.17(b). Inmates can appeal the rejection of a remedy at intake to the next appeal level if no opportunity to correct the mistake is given. Id. § 542.17(c).

An inmate may skip over a warden and file with a regional office if appealing a DHO conviction or if filing a "sensitive" remedy. Id. § 542.14(d)(1)-(2). If regional office staff determines the issue is not "sensitive," the inmate receives written notice that the remedy has been rejected. Id. § 542.14(d)(1). The inmate may then pursue the non-sensitive issue by filing a BP-9 with a warden, who must allow a reasonable extension of time to resubmit. Id.

Plaintiff filed the First Remedy with the wrong office, and despite opportunity to refile with the Warden, he failed to do so. Plaintiff appealed the conviction for the Proposal Charge via the Third and Fifth Remedies, but the Fifth Remedy was rejected at intake as illegible. Plaintiff failed to fix the problem despite the opportunity to do so. Similarly, Plaintiff's Second and Fourth Remedies were deficient and rejected at intake, and Plaintiff did not refile them.

---

[9] An inmate may not raise new issues in an appeal that had not been raised in lower-level filings and may not mix different remedies' issues into a single appeal. Id. § 542.15(b)(2).
[10] Examples for rejection include being illegible, being untimely, and exceeding the page-count limitation.

Plaintiff acknowledges in his response to Defendants' motion that he may not have properly exhausted remedies before commencing this action.[11] He argues, however, that his omission should be excused because proper exhaustion would have caused him to file this action beyond the two-year limitations period. Neither the BOP's Administrative Remedy Program nor the Supreme Court's case law supports such an exception to 42 U.S.C. § 1997e(a). See Ross, 136 S. Ct. at 1859 (finding there was no common-law "special circumstances" exception relieving inmates of obligation to exhaust available administrative remedies). Accordingly, Plaintiff fails to carry his burden to show exhaustion occurred or that remedies were made unavailable through no fault of his own for claims about the Proposal Charge or conditions of confinement, and Defendants are entitled to summary judgment.

## IV.

For the foregoing reasons, the court dismisses without prejudice Plaintiff's due process claim about the pending Assault Charge and grants Defendants' motion for summary judgment as to the remaining claims.

ENTER: This 7th day of May, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge

---

[11] Plaintiff alleges generally that he had sent a BP-9 to the Warden about the Assault Charge, did not receive a response, and submitted it to the Regional Office as the "sensitive" remedy. However, the Regional Office returned the "sensitive" grievance to him to refile with the Warden, which Plaintiff did not do. In any event, that conviction has since been vacated.